The next case called for oral argument is Heser v. Hunt. Counsel? I don't think I don't think that you're opposing counsel set up. Ready? Okay. May it please the court. My name is Brian Calvin, attorney for Andrew Jason Heser and Robert Jeffrey Heser. In the case of Heser v. Hunt arising from the trial court of Marion County, Illinois. A brief factual procedural background, Your Honor. The benefit is that Heser's own property in Marion County, farmland that is, they purchased a 65-acre tract of land in Marion County in 2011. The north 50 acres of that land was in CRP. Remaining southern 15 acres was covered with tree and timber. The southern portion of their land, which was covered with tree and timber, bordered defendant's property, the Hunt's. The Hunt's property is improved with a home and near the border of the Hunt tract and the Heser tract and the Hunt tract is a pond owned by the Hunt's. The Heser property is the dominant property for purposes of drainage. It's of a higher elevation and the history of the properties is that the drainage or water flow after rain events would flow from the Heser property onto and through and across the Hunt property. Shortly after the Hesers purchased their property, which they purchased for the intent of farming, they cleared the 15 acres of timber and trees and prepared the ground for farming. This is where the parties kind of entered the dispute. At some point after the Hesers removed the trees, they dug a ditch on their property, on their side of the property, that went parallel with the Hunt property and went toward a road. Before it got to the road, the ditch stopped and went onto, the drainage would go onto the Hunt property. So why the Hesers did this was a point of contention in the trial court. And then what is undisputed is at the same time this was happening, that the Hesers built this ditch, the Hunts built two berms, which is called, they're referred to as berms in the transcript. They can be considered dams as well. Was it disputed in the testimony about whether the berms were built before or after the ditch was dug? Yes, Your Honor, it was disputed. Because the Hunts took the position that they built the berms to protect their land from the change in flow of drainage created by the Hesers digging the ditch. That's exactly right. So the Hunts' position is that they built the berms. And the trial court found that was right. That's exactly right. That's correct, Your Honor. And it was a trial. Yes, and the trial court, as the finer in fact, made a finding and that the Hesers are bound by that finding. It's what the court found. But that distinction, I don't believe, is relevant for purposes of my argument here today. Whether or not the Hesers built the ditch in response to the berm, the berm was built in response to the ditch, I think leads me to my legal argument. Because it sounds as if the court understands the facts and the procedural background. My legal argument is that since the Hesers are the dominant property owner, the drainage code states that land may be drained in the course of natural drainage. And that Section 2-12 of the code prohibits a subservient landowner from obstructing natural drainage. Mr. Kalk? Yes, Mr. Chief. Has there been any drainage problems on the property prior to the clearing of the property by your client? Your Honor, the testimony at the court before the trial judge was that there was no significant drainage problems for Mr. Hunt until my clients cleared the trees. And then after my client cleared the trees, Mr. Hunt started to complain of gully washes through his property. And the evidence showed that there was some water that impeded his ability to get to his driveway. So there was a finding of fact that we're bound to in that regard. And this is a manifest wake case? It is a manifest wake case. But those findings don't change what the argument is here. And that is my client was ordered to fill in the ditch, which he's done and the parties are still arguing whether he did it sufficiently, that that's something not on appeal. My clients were ordered to fill in the ditch, but Mr. Hunt still has those two berms that are acting as dams that are impeding the natural flow of water. So let me stop you there for just a second. As I understand your brief, you are not appealing the grant of the Hunt's counterclaim. That's exactly right. You know, you're good with that, or at least you're not challenging that. I don't think I'm challenging it. You're challenging the fact that the trial court did not also grant your complaint about the berms. The count one, yes, Your Honor. Right. Okay. So here's my question. Was there any evidence in the trial that the berms that once you go back to the natural flow by filling in the ditch that the berms would in any way impede drainage? Yes, Your Honor. The undisputed testimony from Mr. Hunt was that the natural flow of water was from the Hester property, I guess evenly dispersed across the Hunt property. Those berms, now that they exist, are prohibiting the natural flow of water spread evenly across Mr. Hunt's property. And Mr. Hunt testified that his property would take in the water from the Hester property, specifically at the area of the pond. Well, that area of the pond, which he testified the water previously went across and went into his pond, is now dammed. Okay, here's what I'm trying to understand. The Hunt's claim in the trial court found that the berms were built to stop the flow of water that was the unnatural flow of water created by the ditch, right? In other words, the trial court found they built the berms after the flow was changed. The trial court found that the ditch was causing the unnatural flow of water in an increased rate down to a point of discharge on the Hunt property, which was causing Mr. Hunt's... Is that where the berms were built? There was two berms built. Okay. One of the berms was built at that point of discharge to prevent those gully washes from happening on his property. The second berm was built around the pond, which was intended to keep the pond from leaching, I guess, onto the ditch because it was lowering the water flow. The water was going from the soil into the ditch. But now that the... And this is where the problem that the order kind of doesn't really address is now that the ditch is full, the berms are still there, causing what was the allegations in count one, the damming on my client's property. And now my client is... The dominant estate is now prohibited or prevented from having discharge of water flow evenly across Mr. Hunt's property. And now those dams are causing backup on my property with or without the ditch. Not my property, my client's property, with or without the ditch. So the court's order as it relates or opinion as it relates to Mr. Hunt's count addresses the ditch and finds that my client was discharging water at a rate and at higher velocity across the Hunt's property. We, the officers, have to correct that. But at the same time, Illinois law does not allow for the subservient property owner to alter the change in natural course of water through his property. And that is where I believe the order stopped short in rectifying the problem between the parties. Now we're back to a situation where my clients still have the issue of damming on their property because of the berms. So that to be consistent in the court's order, and my argument is that if the Hesses are required to fill in the ditch to restore the natural flow of water, then Hunt must be compelled to remove the berms to allow the status quo ante as it was before the berms were built. What evidence is there in the record that these berms are impeding? Did you have an engineer? Did you just have the – is there just the testimony of the property owners? What do you have? Yes, Your Honor. The Hesses proffered an expert, an engineer named Mr. Keel, who testified as to what the previous drainage was through the property and that the dam is indeed impeding the natural flow. And my clients testified to the same. So there was both lay witness testimony and expert testimony on that point. So I believe the court has addressed the main issue in the case and the argument that I have. I have nothing further as it relates to the argument. That's the only point of error I claim is a manifest of weight argument and that to make the outcome consistent and as it was before my clients built the ditch, that the berms be removed. My client put in the – my clients fill in the ditch, the berms are removed, and then the natural flow of water is restored as it was before. Otherwise, my client is not going to be able to farm their land and utilize the benefit of the purchase. Thank you, Your Honor. Thank you, Counsel. Counsel? May I please report, Counsel? The problem with this appeal is that the toothpaste is out of the tube and a plaintiff is asking this court to somehow put the toothpaste back in. When we talk about the natural drains, the evidence was not just overwhelming. The evidence was undisputed. We had witnesses that were familiar with this land for 50 years, 40 years. Six separate witnesses, including both plaintiffs, testified that prior to 2011 when the Hesters bought the North Track, the Hunt Track had never flooded. That would include the flood year of 93, the worst flood years we've had in the past 50 years. Then they not only clear-cut the land, which was their right to do if they wanted to farm it, they built what could charitably be called a ditch. I think we refer to it as a canal, and if you see those pictures, we're talking about a four-foot deep, about two-foot wide ditch all along their southern border. But rather than run it out to the road ditch, they stopped between 100 and 200 feet east of the road. So suddenly what was undisputed to be the natural, diffuse drainage for over 50 years, never caused a problem on the Hunt Track, is disgorging all the flow southerly at a single point, 100 to 200 feet west of my client, east of my client's boundary, right on this property. And if the court has viewed the pictures, you see it flooded to the extent that there were times when his driveway was so flooded he couldn't even get this house. So we can't go back to the natural drainage. We can't put the toothpaste back in the tube anymore because the place has been clear-cut. There's been grading done. Sure, the ditch could be filled in, and it has been. And I think what the plaintiff really wants, the trial court reserved, and I think it would be, even if the court hadn't specifically reserved, I think the trial court would always have a right to modify an injunction if the fact is a mandatory injunction, if the facts change justifying the modification. If they claim they've done everything to restore the old natural drainage where now it would be diffuse over the entire boundary line and not cause flooding on the Hunt property, then those are all facts which have occurred subsequent to the trial court's entry of the order, and I don't know how this court could even address that. That would be something that would have to go back to the trial court, ask the trial court to modify its order, and then evidence could be put on to say, all right, what's the situation now? Have the plaintiffs restored it to its prior natural drainage condition? We think they have not because we've been back in the trial court to try and enforce this injunction, you know, but that's not in this record, and it really can't be in this record. There's going to have to be testimony concerning that. So as plaintiff concedes with respect to finding that what the plaintiffs did was improper and the court had a right to enjoin it, that is on this record so clear as to be inarguable. What happens thereafter is something, as I said, the trial court would just have to monitor and change. If changes exist, then let the trial court address it. But this court, on this record, I don't see how it could find that the findings were either against the manifest way of the evidence, the factual findings, which really hasn't been argued here by counsel, or two, that it was contrary to law. The case law side clearly shows that both the Bollweg case and the Schulte case, that a dominant estate does not have an unlimited right to change the natural drainage to flood the serving estate, and that's exactly what happened here. It's a balancing test, balance the harm versus the benefit to the dominant estate versus the harm against the serving estate here. The benefit to the dominant estate here was that the passers didn't have to put up with a small area that was wet where they farmed. The burden to the serving estate here was that he couldn't get to his house. He had massive flooding, which had never occurred before. Let me ask you the same question I asked your opposing counsel. I mean, my understanding was, and the trial court found, that the berms were built in response to the building of the ditch. So the berms were meant to combat the change in the natural flow. Is that correct? That's exactly right. Okay. So I guess my question is then, I mean, if you go back to the natural flow, how would the berms be causing a problem? That's what I'm trying to. And we don't. Because it's not all pointed at the berms now. Right. That's what it seems like to me. I agree 100%. I mean, maybe we're misunderstanding here, but I understand at least some of these berms were built at this point where the ditch ran down to. Exactly. He built up his land in a strictly defensive maneuver, built up his land at the discharge point, and also by digging this canal, I mean, right on the boundary line, and his pond was right at the boundary line, his pond was being drained. It was going to be a big muddle. And so he built up his berm there by his pond and then by the discharge point. I agree, Your Honor. If assumed that what they have done has restored a natural diffuse drainage, why that would cause problems at this point, I don't know. Those are two very limited areas, just right by his pond and right by the discharge point of the former canal. So why that would cause a problem, I don't know. So tell me if I'm misunderstanding something here. Before, the natural drainage came across the property over hundreds of feet, and after the ditch was built, it was all directed to one point. Exactly. Is that right? Okay. And the berms were built to combat that one point. Yeah, and I point out the record's pretty clear, unsuccessfully, because the flushing continued. I mean, he did what he could to minimize it, but it certainly didn't stop the flooding. Okay. If it had been, we wouldn't have been in court. All my client wants is not to be flooded out. But just like it was for the ten years he lived there before the Hessers did what they did. Just go back to the status quo, and it's the Hessers' obligation since they made the change to do the changes back to simply restore that status quo. We're not trying to flood him. We just want him to be able to get to his house and be able to use his land as he had in the past. So I think it's a simple case. I think it's affirmed both on the facts and the law. And if changes have to be made, that's a trial court function, not just courts. Okay, thank you. Thank you. Thank you. Counsel? Your Honor, again, the Hessers concede that they were defeated on the Hunt's counterclaim, and therefore they were required to fill in the ditch to prevent any further gully washing or flooding on the Hunt's property. That's not my argument. So my argument is only, and I think the Court actually is in tune with it, is that count one, which is the Hessers' count, required the removal of the berms. And that is what we are arguing about. To address Your Honor's question, it seems as if the Court is questioning how the berms impact the natural flow of water across the Hunt's property and is impeding into the detriment of my clients. To briefly answer, my clients built a ditch four feet deep, and that ditch was before it was found, the trough was found, was increasing the flow of water to a particular discharge point that was new. And Illinois law prohibits increased flow to a discharge point across another person's property. Mr. Hunt built a dam or a large berm around his pond that is elevated now. So one, I disagree it has anything to do with the other as far as why Mr. Hunt did it. I believe it was because, and I think the record shows it, he was worried about discharge or leaching from his pond onto my client's property. Once that ditch is filled in, that dam is still there. So now my client's water is flowing evenly from his farm field and hitting this large berm and now discharging around to the point it can this pond or backing up onto my client's property and flooding it, which prohibits my client from farming it. So now that my client has filled in the ditch, there's still a dam just right next to it. We need that dam gone, which was built only recently, so that the water can now discharge exactly the way it was evenly distributed across Mr. Hunt's property, which he testified was the prior course of drainage before the trees were removed and the ditch was built. So I hope that addresses Your Honor's question as to how that berm negatively impacts and is prejudicial to my client's use of his property and the prior course of drainage. Briefly, I missed Mr. Terralizzi's point that this is something for the trial court. It's really procedurally not the same issue. My appeal is from the finding of the trial court and therefore is a manifest argument. If there's an issue with the injunction, of course, Your Honor, the trial court has jurisdiction, but this is an appeal from the finding of a final order. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take this case under advisement and take a short recess.